## ADA ELMIRA VAN SYCKEL ET AL.

### v.

## SOBRINOS DE EZQUIAGA ET AL.

---

Equity, No. 453.

1. The joint counsel of several persons may afterward testify against the interests of one of his clients, since deceased, in a controversy between the other and the representatives of the deceased person.

2. One partner of a firm held a perpetual lease of a certain tract of land. He was also the assignee of a mortgagee of the same tract. An agreement between the partners, executed before the mortgage was foreclosed, that the lease should have priority over the mortgage, is not against good conscience, and will be upheld.

3. Nevertheless, when the facts show that, as between the partners, it was not intended that the agreement should be effective, it will not be given consideration in the settlement of partnership accounts.

Van Syckel v. Sobrinos de Ezquiaga.

4. The mortgage was foreclosed and the firm purchased at the sale. It subsequently secured a release from the mortgagor. Held, that the lease was partnership property and became merged in the superior title.

Opinion filed July 31, 1908.

---

*Mr. Pettingill,* attorney for the complainants.

*Mr. Francis H. Dexter,* attorney for the respondents.

RODEY, Judge, delivered the following opinion:

This suit has been pending a little more than a year. Its object is to settle the legal rights of the parties, so that an accounting can be had between them, and the concern involved, which is a partnership, be finally dissolved and the property divided.

At the present time the only issue before us is to settle these rights,—the accounting and separation of the actual property to be done at a later date.

The complainants are the widow and minor children of the late Paul Van Syckel. The principal respondents are an old established business firm of the city of San Juan.

At the present time there is but one really serious question between the parties. It is whether or not a certain lease of 279 cuerdas of land of a plantation known as "Santa Cruz," in favor of the deceased Paul Van Syckel, is still subsisting and in force. The contest as to this has been carried on positively and strenuously by each side.

The record consists of a considerable amount of oral evidence,

which was taken directly before the court on April 14th, 1908, and succeeding days, and some other evidence taken in a former hearing in this court, besides a lot of public documents, insular, supreme, and district court records, orders, judgments, decrees, etc., and printed briefs and arguments in other cases. Extensive written arguments and briefs by the respective counsel in this particular case are also before us.

In order to understand the issue, it is necessary to set out, as briefly as may be, the transactions and facts out of which the controversy arises, which may be done about as follows:

For some time previous to the entering into the partnership with reference to which this litigation is pending, the husband and father of the complainants, Mr. Paul Van Syckel, a civil engineer by profession, was the agent of the Standard Oil Company in Porto Rico and other places in the West Indies, and, it seems, was a man of some means and had business interests of his own.

In June, 1897, he procured an indeterminate lease of nearly the whole of a plantation in the Bayamon district, south of San Juan, Porto Rico, from its owner, a certain Mr. Montilla, at a monthly rental of 105 pesos of the then current money, which, under the act of Congress afterwards passed, fixing the value of such currency, amounted to about $63, United States gold. It is doubtful if the parties to this lease at this date had any idea that the Spanish-American War would shortly thereafter be a part of history, and hence property values in Porto Rico were much less than they were a few years later, after American occupation of the island, and the inauguration of free trade with the United States.

Mr. Van Syckel, after the beginning of the war, no doubt

Van Syckel v. Sobrinos de Ezquiaga.

realized the probable value this lease of his would soon have, and hence endeavored to have it recorded in the proper registry of property. On attempting to have this done, he was met with a refusal of the recorder because it seems that, under the law of Porto Rico, no lease could be recorded unless it had at least six years to run; and, as the term of the one in question was not fixed, it could not be recorded. Thereupon, in October, 1899, Van Syckel went before a local notary and executed some sort of an *ex parte* "public" instrument, by which he declared that he would hold said lease and pay the rent for six years anyway, but, in terms, reserved the right to hold it indefinitely thereafter. The registrar of property, after a court decision in that regard against him, recorded the lease.

It further appears that the owner of this plantation, Mr. Montilla, some years previous to the making of the lease to Van Syckel, had several times mortgaged the plantation to a certain Mr. Marxuach, and which mortgages had all been or were considered as consolidated into one, under date of August 9, 1894. This consolidated mortgage was outstanding and still unpaid at the time that Montilla made the indeterminate lease to Van Syckel.

It appears also that, about the time Van Syckel secured the recording of this lease, the owner of the plantation began to appreciate the fact that he had made a grave mistake in ever making such an instrument, and wanted to get rid of it. Therefore, as appears from the evidence adduced in subsequent litigation, in December, 1899, Montilla, the owner of the plantation, and Marxuach, the holder of this consolidated mortgage upon it, entered into a secret agreement by which Marxuach was to foreclose his mortgage, and, if possible, buy in the prop-

IV. PORTO RICO—15.

erty, as he would have a right to do, and then hold it until Montilla could redeem it from him. Van Syckel shortly thereafter, and early in the year 1900, to prevent this from being done, brought a suit in the then United States provisional court of the island, and, strange to say, secured a decree virtually holding, as we see it, his lease to be a perpetuity; and also secured the right in that same decree to pay off the mortgage of Marxnach, and hold the same against Montilla, in addition to having the lease. Under this decree of the provisional court, Marxnach was forced to and did, on March 16th, 1900, assign his mortgage for its face value of 11,697.65 pesos, or $7,018.59 gold, to Van Syckel, who paid him that sum for it, and thus became the holder of the mortgage as well as the owner of this then and now alleged perpetual lease.

Shortly thereafter, in June, 1900, Van Syckel organized a new firm, known as P. Van Syckel & Company. It was composed of the said Van Syckel himself, on the one side, and the respondent firm of Sobrinos de Ezquiaga on the other. Its capital consisted of 30,000 pesos, of which each of the parties contributed one half. Their partnership agreement shows the items that make up this capital in detail. Van Syckel turned in a plantation which he then happened to own, known as "Plantaje," which he valued at 4,148 pesos, or $2,488.80 gold. He also contributed this Montilla mortgage on the plantation "Santa Cruz," which, at that date, he valued at 11,724.77 pesos, or $7,034.86 gold. It is contended on the one side, and denied on the other, that this item included the lease also. It is certainly a fact that this plantation was one of the principal properties used by the partnership thereafter in its business. Van Syckel also furnished a large amount of cattle and farm imple-

Van Syckel v. Sobrinos de Ezquiaga.

ments to this partnership. The business to be carried on was principally a dairy business which Van Syckel had theretofore been conducting alone on these two plantations. The other parties, Sobrinos de Ezquiaga, paid him 15,000 pesos in cash as their half of the contribution to this equal partnership; and the business was proceeded with.

It appears that Montilla was very much dissatisfied with the decision of the United States provisional court which forced the assignment of Marxuach's mortgage to Van Syckel, and with its decision virtually holding the lease to be a perpetuity. This all occurred, as it appears, on his default in that court. He therefore at once began threatening to commence proceedings to have the same set aside or to attack it in some way so as to get the mortgage back into the hands of his friend Marxuach, and in the next few years there occurred a very strenuous and annoying amount of litigation in several courts between the parties, as will be hereafter referred to.

Therefore, on July 27, 1901, there took place a transaction which is the bone of contention here. On this date Van Syckel and Sobrinos de Ezquiaga went before a local notary and executed a "public" instrument between themselves, by which they affirmed and admitted that the lease of the plantation "Santa Cruz" from Montilla to Van Syckel should be considered as still alive and subsisting in favor of Paul Van Syckel alone, and as having priority over the mortgage, without reference to Van Syckel's partnership agreement with Sobrinos de Ezquiaga. However, a couple of months thereafter, in September, 1901, the said Montilla not having in the meantime paid either the principal or interest on this mortgage, now so held by this new firm of P. Van Syckel & Company, they foreclosed the same under

the then summary proceeding that obtained, and had the plantation adjudicated to the said firm, but secured in this decree a reservation of the leasehold right on the 279 cuerdas of the plantation to Van Syckel alone. This decree excepted from the leasehold right 35 cuerdas of the plantation, which, although mentioned in the mortgage, was not included in the lease to Van Syckel.

It appears that Sobrinos de Ezquiaga, probably before, and certainly since, the death of Van Syckel, which occurred December 27th, 1905, have carried on the two plantations that formed the real estate basis of the partnership of P. Van Syckel & Company; but it also appears that they kept a separate account of the management, expenses, and product of each of the plantations, "Santa Cruz" and "Plantaje."

It also appears that some time after the events we have just mentioned, and in August, 1905, an additional partnership was formed between this firm of P. Van Syckel & Company and the respondent Paul A. English, to cultivate sugar cane on the two plantations, "Santa Cruz" and "Plantaje." This new firm was called the Santa Cruz Sugar Company, and its capital, which consisted of $10,000, was contributed in the proportion of 85 per cent thereof by P. Van Syckel & Company and 15 per cent thereof by the said Paul A. English; but the firm of P. Van Syckel & Company, under the terms of this new partnership, kept exclusive actual control of the same. The new firm was to pay $175 per month rental "to the party entitled thereto," but did not specify who such party was. This is the only connection the respondent English has with this litigation, and it will therefore not be necessary at this time to further consider any of his rights in the premises.

Van Syckel v. Sobrinos de Ezquiaga.

The litigation between Montilla, on the one side, and P. Van Syckel & Company, as a firm, and Paul Van Syckel alone, on the other, continued for several years,—in fact, from 1901 to 1905, inclusive. They instituted all sorts of proceedings against each other· in the insular courts, and harassed each other in many ways. Van Syckel was living in Havana, Cuba, most of this time, and a great deal of his correspondence with Sobrinos de Ezquiaga and their attorney, Eduardo de Acuña, during this period, is in evidence, and the conclusion from it all is irresistible that the feeling between Van Syckel, at least, and Montilla, was extremely bitter, and that Van Syckel wanted everything done that could be done to silence Montilla and discourage his litigation; and not only did these letters suggest retaliations and attacks on Montilla, but Van Syckel gave full authority to De Acuña, and took all his advice as to the doing of everything that might tend to enable Van Syckel's side to prevail over Montilla.

Finally, after years of this sort of legal turmoil and strife, and on December 30, 1905, which was in fact two or three days after Van Syckel had died, De Acuña, not knowing of the death, and acting under a power of attorney of date in the year 1901, from Van Syckel to Mr. Arzuaga of the firm of Sobrinos de Ezquiaga, negotiated a complete settlement between P. Van Syckel & Company, on the one side, and Montilla, on the other, by the payment to the latter by P. Van Syckel & Company of the sum of $2,500 in cash. At this time, Montilla, in addition to several other proceedings against Van Syckel and respondents, had an appeal pending against the foreclosure or adjudication of the consolidated mortgage, from the decision of the supreme court of Porto Rico to the Supreme Court of the United States. By this settlement the parties dismissed all their several

Van Syckel v. Sobrinos de Ezquiaga.

suits against each other which were then pending, including the appeal to the Supreme Court of the United States, each paying their own costs, and the matter, as far as that phase of it was concerned, was ended.

The complainant Mrs. Van Syckel, for herself and the children, now asserts, and her counsel vehemently argues, that when an accounting is had with Sobrinos de Ezquiaga, and the property belonging to the firm of P. Van Syckel & Company is accounted for, and about to be divided between the parties, that she and the children are entitled to thereafter continue as the lessees of the 279 cuerdas of this plantation Santa Cruz, indefinitely, under this indeterminate lease, paying Sobrinos de Ezquiaga, as half owners in the partnership of P. Van Syckel & Company, which now owns the fee to the land mentioned, one half the rental fixed in the lease,—that is to say, $31.50 gold per month rental therefor, and this, notwithstanding the fact that Sobrinos de Ezquiaga are, as stated, since the foreclosure, the actual owners of a half interest in the land themselves. In addition to this, she claims that, during all the time this partnership of P. Van Syckel & Company has existed, she is entitled to have credited to herself and the children all this monthly rent to the time of the foreclosure, and half the rent since that time,—that is, $63 gold per month at first, and $31.50 gold per month since; and all this because she insists that this lease not only has never been canceled, merged, or substituted, either by the making of the partnership agreement or the foreclosure of the consolidated mortgage; but that, by the direct notarial "public" acknowledgment of her husband and these respondents Sobrinos de Ezquiaga, and by the direct decrees of the district and supreme courts of the island in litigation about the same, it is still subsisting and in force.

Van Syckel v. Sobrinos de Ezquiaga.

On the other hand, Sobrinos de Ezquiaga and their counsel quite as vehemently contend and insist that the Montilla lease to Paul Van Syckel was intentionally and by agreement of the parties merged in the partnership of P. Van Syckel & Company, and then and there ceased to have force in the sense now here contended for by Mrs. Van Syckel, and that, in consequence, nothing remains to be done but to have an accounting as to the partnership affairs generally, and a division of the property, which may be done by actually dividing it *in specie,* or having it sold and the proceeds divided as may be proper under the law and the findings of the court.

Then respondents further assert that the reason for the making of the public instrument of acknowledgment of July 27th, 1901, by which Marxuach's mortgage, then owned by P. Van Syckel & Company, was postponed and rendered subject to the lease, was because the firm of P. Van Syckel & Company at that time had great fear that Montilla might succeed in getting the decree of the United States provisional court, holding the lease good indefinitely, and forcing the assignment of the Marxuach mortgage to Van Syckel, set aside, and that he might succeed in reversing the insular court's decision that the lease was recordable, and that they wanted the firm to be in a position to catch things going or coming, and to hold the property under this lease in case such assignment of the mortgage and the other proceedings and decisions were in fact set aside, or in case Montilla came forward with the money and paid off the mortgage; and that such acknowledgment of the priority and continuing subsistence, as against the firm, of the lease, had no other object than that of the protection of the interests of the firm of P. Van Syckel & Company; that it was done for the firm's benefit, by Van Syckel,

Van Syckel v. Sobrinos de Ezquiaga.

to protect himself and the firm, as he had a right to do, and was not made to enable Van Syckel to get any advantage over the firm.

To this, counsel for Mrs. Van Syckel replies, denying the same, of course, and asserting that, if this is true, then the instrument must have been made to deceive the courts of the island, and in such case no court of equity will listen to such a claim, because the same is immoral, and soils the hands of those who make it; and that no court of equity will let those making it take advantage of it. On the other hand, respondents, with equal emphasis, reply that there was nothing wrong or that involved moral turpitude in such act of asserting to the world that this lease still had force for the purpose indicated, but that, if there is anything wrong about it, which they vehemently deny, then Mrs. Van Syckel, as representing her husband, cannot be permitted by a court of equity to take advantage of it, as she stands as to it with only the same rights as her husband would have were he alive, and that in such a case the parties would be *in pari delicto.* They further urge that, because there are many other equities between the parties, this court will not refuse relief as to the whole case even on that ground.

They further say that it would be unreasonable to now hold this lease as subsisting, because they contend all the acts of the partners show that it was not to be so considered, and the books and accounts were kept in accord with that view; and because, at any rate, it was extinguished two or more months after it was made, in the foreclosure or "adjudication" proceedings of the prior consolidated mortgage, etc.

During the trial a bitter contest arose about the right of the witness Eduardo de Acuña, who was counsel for both sides of

Van Syckel v. Sobrinos de Ezquiaga.

the firm of P. Van Syckel & Company at the time of the occurrence of all the transactions here mentioned, to testify, now that Paul Van Syckel is dead, against his interest or the claim of his estate in these proceedings. After a full hearing as to that matter, we hold that the circumstances developed did not show that the communications about which Acuña was asked here were privileged, because the dispute is now about matters as to which he was, at the time, the joint counsel of the parties, and the dispute is now between themselves, so his evidence could even be compelled by either party, and so it was permitted to go in the record.

The pleadings as finally settled after pleas, demurrers, applications for a receiver, motions, etc., and many hearings on the same, are simply a bill setting forth in detail the transactions between the parties as here set out, and an answer and cross bill by respondents,—the former admitting and denying the allegations of the bill as here indicated, and the cross bill asserting the intent of the parties also as indicated as to this lease, and praying for affirmative relief in the premises, and that the lease be held to be merged in the partnership and foreclosure, as was intended, and that the same be held to have no further force or effect. Proper replications were filed to both the answer to the main bill and the cross bill.

The partnership between the parties has, some considerable time since, expired even by limitation, as well as by the death of Paul Van Syckel, and so both parties are in accord in the request for a decree that the same should be settled by a proper accounting and division of the property, to take place after the court has settled the issue here as to this matter of the lease.

The evident bitterness with which the issue here is contended

for by both sides has forced us to make an unusually careful examination of all of the testimony, the written briefs and arguments, and of all the authorities referred to, as well as of the very large number of exhibits in the case.

The lease itself is peculiar, and, to a considerable extent, apparently unilateral. It provides that Van Syckel can give it up any time on a couple of months' notice to Montilla, while, on the other hand, it provides that, so long as Van Syckel pays the rent, he cannot be disturbed save on Montilla paying him damages; at least, that is the inference we draw from it. It is not for us here to criticize the default decree of our predecessor, the United States provisional court of the island, of which, by the way, counsel for complainants here was the learned law judge, as well as having thereafter been of counsel in some portion, at least, of the controversies between Van Syckel and P. Van Syckel & Company against or at the suit of Montilla in the supreme court of the island. We must therefore consider the lease as in force at the time mentioned. However, when the trouble began, it was carried on vigorously on both sides and much litigation ensued. Montilla resisted the recording of the lease, and took an appeal from the decision of the insular district court to the supreme court of the island, on that question. He also resisted the foreclosure or adjudication of the consolidated mortgage, as stated, and took an appeal from a decision against him as to that.

The inference to be drawn from the testimony of the witness Eduardo de Acuña, who was attorney for both parties at the time, is that it was at his suggestion that Sobrinos de Ezquiaga and Van Syckel entered into this public acknowledgment by which the mortgage was "postponed" to the lease. In this he is

Van Syckel v. Sobrinos de Ezquiaga.

corroborated by several documents, facts, and circumstances in the case. De Acuña further testifies that he fully explained the whole situation to both Van Syckel and Sobrinos de Ezquiaga, and that his object, and his only object, which he claims was thoroughly understood by all of the members of the firm of P. Van Syckel & Company, was that they should make this acknowledgment as between themselves, not with the object of then or ultimately leaving any interest in the lease in Paul Van Syckel alone, but to enable Van Syckel to hold the land for the firm in case of the success of Montilla in any of his suits against them, or in case he should actually pay off the consolidated mortgage then owned by P. Van Syckel & Company. He points out that this public acknowledgment took place several months before the actual foreclosure of the consolidated mortgage by the firm against Montilla, and insists that there is nothing wrong about it in any way, but that it was only the assertion of a straight legal right, etc., and that Montilla had a complete remedy at any time before foreclosure by paying off the mortgage and getting the lease canceled if he could.

Counsel for complainants here criticizes this testimony severely, and points to it as unreliable, because he contends it confesses an act that was intended to deceive the district and supreme courts of the island, if De Acuña's present statement is the true explanation; and that it induced those courts, in all their decisions, notices of sale, etc., to specifically hold the lease as still subsisting, etc. The other side answers this by pointing out that the partnership was strictly the business of Van Syckel and Sobrinos de Ezquiaga, and had nothing to do with the fight between Van Syckel and Montilla as to the lease.

The citation of authorities submitted by counsel for complain-

ants has driven us to an exhaustive examination as to whether or not this was such an illegal or immoral transaction as that a court of equity will not lend its aid to either, or, at least, to the guilty party, in its enforcement. We find the rule to be undeviating that courts of equity will not aid guilty parties if a contract is immoral or against public policy. However, we find that it is often a very difficult question to say when a contract or transaction comes within the purview of this salutary rule of courts of conscience.

Having a full appreciation of the ethics that should govern counsel in the conduct of all litigation in their advice to their clients, we have examined this question to see whether, under all the circumstances, the making of this public acknowledgment as to this lease is of the character indicated; and while we are forced to confess that it appears to approach the line closely, we are not able to say that any direct intentional deceit was actually practised on the courts, or, in the last analysis, that any fraud was practised on Montilla if the lease was assignable under the statute while Van Syckel lived. We have examined the printed briefs submitted to the supreme court, carefully, to determine this. Why did not Van Syckel have the right to protect his own possession of the land or his sale or assignment to the partnership in this manner if he thought it was necessary? It must be remembered, also, that there was no secret about the partnership, it was constituted by a public instrument, and Mr. Montilla had opportunity to have notice of it as well as the postponing instrument, so we cannot see how he was deceived, or how the courts, having actual notice of both, could affect the rights of Montilla or prevent bidders at the sale of the property under the foreclosure or adjudication of the consolidated mortgage, because

it appears to us that, if the lease was good at all,—and it had at that time been held to be good,—its benefits could be claimed by Van Syckel either individually or as a member of the firm of P. Van Syckel & Company.

We do not regard the facts here as making this case at all parallel to the case of Wheeler v. Sage, 1 Wall. 530, 17 L. ed. 649, where a conspiracy was entered into to secure the title to valuable real estate of an insolvent debtor at the expense and sacrifice of his creditors, and which conspiracy was properly condemned by that august tribunal.

We have found many cases that approach the line as closely as this does, where the courts did not refuse relief. We can plainly see, from the items enumerated in the articles of partnership of P. Van Syckel & Company, that this consolidated mortgage was put in as a part of the assets of the firm, to make up the total of 30,000 pesos, and Van Syckel sold a half interest in those assets, including the two plantations and a lot of movable property, for half of this sum, that is 15,000 pesos, to Sobrinos de Ezquiaga, which he received in cash from them.

We fail to see the force of the claim that Van Syckel put in a mere "credit" or mortgage debt, as an asset of this firm, the business of which was to carry on a dairy, and it looks ridiculous to say that these respondents simply invested in half of an interest-bearing mortgage. Van Syckel himself had been using this ranch for some time previous, for this same purpose, as a dairy ranch, and the firm continued to use it for the same purpose for some time thereafter. The firm could not ordinarily promote a dairy business by simply owning a mortgage which might be paid off any moment, so it seems to us to be plain that Van Syckel intended to include the possession which included the lease in the assets of the firm.

Van Syckel v. Sobrinos de Ezquiaga.

Counsel for complainants contends that his position is sound,. because, after the making of this instrument, postponing the mortgage to the lease, and in November, 1902, when portions of this Santa Cruz plantation were sublet to a stranger, Van Syckel,. in addition to the lease of the firm, executed a sublease himself to the tenant for these 279 cuerdas of land. We can well see how this was necessary because of the existence of this postponing instrument; and we can well see how the same could not, at that time, have been avoided, because Montilla had appealed from all previous court decisions against him as to the recording of the lease and the foreclosure or adjudication of the mortgage. The language used in a later lease to the Santa Cruz Sugar Company of the plantation, that the rent shall be paid "to the person or corporation which, at any time, shall appear to be the owner or lessee thereof," but further confirms us in the belief that, as between the parties themselves, Sobrinos de Ezquiaga and Paul Van Syckel understood the object of the making of this postponing instrument to be exactly as the witness De Acuña testified it was. Therefore, as this is a direct proceeding to have this postponing instrument canceled. and as we firmly believe that the evidence overwhelmingly shows. it was never intended to have any force against P. Van Syckel & Company or Sobrinos de Ezquiaga, we do not see how we can avoid granting the relief. Think of the position all the parties will be in if relief is denied!

Counsel for complainants seems to fully appreciate this, because he suggests that the court ought to refuse the relief, and order a division of the assets with that lease still in force, and then oblige Sobrinos de Ezquiaga to become complainants and bring a subsequent suit to cancel the lease, because of all

Van Syckel v. Sobrinos de Ezquiaga.

of the facts set out above, and let them take their chances in that way.

We think, with all due respect, that this is evading the question, and would result only in unnecessary delay and additional litigation and complications, when the whole matter can and ought to be settled on the pleadings here.

All of the litigation about this lease occurred at a time when the courts could well hold it to be in force,—that is, within the first six years after its date,—while it is doubtful· if any court would hold it in force now. It will be remembered that, on December 30th, 1905, all litigation between the parties was ended, and P. Van Syckel & Company, by the payment of $2,-500 to Montilla, became the owners of this entire plantation, free from every claim against it unless this lease is outstanding. It is, of course, true, that this latter sum was paid by the firm after the death of Van Syckel, but the result inured to the benefit of his estate.

There is not a word of evidence in the case which shows that P. Van Syckel & Company ever paid any rent to Paul Van Syckel for this lease, or have ever given him any credit for any such rent, or that Van Syckel ever asked the firm to so give him credit for any rent, although it is in evidence that Sobrinos de Ezquiaga sent Van Syckel numerous statements of their accounts of the firm's business while he was living in Cuba.

It is undoubtedly true, as testified by Mrs. Van Syckel and the witnesses Paul and Aden English, that Mr. Van Syckel, several times during his life, said, in their presence and hearing, that he placed great value on the lease in question and on the postponing instrument. Of course he did, and well he might, under all the circumstances, as those instruments, until directly

Van Syckel v. Sobrinos de Ezquiaga.

attacked, gave him great prima facie advantage in all his litigation.

We fully agree with the doctrine laid down by the Supreme Court of the United States in Maxwell Land-Grant Case (United States v. Maxwell Land-Grant Co.) 121 U. S. 381, 30 L. ed. 959, 7 Sup. Ct. Rep. 1015, that the general rule is that when, in a court of equity, it is proposed to set aside, to annul, or to correct a written instrument for fraud or mistake in the execution of it, the testimony under which it is done must be clear, unequivocal, and convincing, etc.; but we think that the evidence in this case is clear, unequivocal, and convincing, and is wholly inconsistent with the claim that this lease, as between the parties, was to have life in their accounting during or after the date of the partnership. This is so plain to us that nothing but the high standing of counsel making it, and his coupling it with an intimation, at least, of unprofessional conduct on the part of the party who advised it, induces us to give it a second thought.

The overwhelming weight of the evidence in the case shows that Paul Van Syckel was just as prominent and even a much more active party than Sobrinos de Ezquiaga were in all defenses against, or attacks upon, Montilla. A reading of the correspondence that is in evidence will convince anyone of this. What would be the position of Van Syckel here, if this were a suit by himself, in his lifetime, to collect rent on account of this lease, and a plea to the complaint should be interposed, setting up all the facts and circumstances set out in the present cross bill, and submitted by the proofs here? How can his heirs be in any better position?

Counsel for respondents insists that nothing in the whole transaction involves moral turpitude, that Mr. Van Syckel was

Van Syckel v. Sobrinos de Ezquiaga.

an honorable man, and that neither he nor respondents wanted or would take any undue advantage of the other.

Counsel for complainants of course agrees that Mr. Van Syckel was an honorable man, and, for that reason, he, also, insists that there was nothing wrong about the making of the postponing instrument, and insists that it was and is a legitimate exposition of the intention of the partners, and meant just what it said, and that it became, was, and is a property asset of Van Syckel and his estate.

After carefully looking over the whole situation we are utterly unable, without doing violence to our judgment, to agree with the contention that this postponing instrument was intended to inure to the profit of Van Syckel himself as against the firm. It is our opinion that Mr. Van Syckel sold a full half interest in his dairy business and all that constituted it, which included every right he had to all property concerned, for 15,000 pesos, to respondents Sobrinos de Ezquiaga. Neither can we see how it would profit Mrs. Van Syckel very much at this time to hold that this lease is still in force. It would simply result in delay and in further complications while a suit was being carried on to cancel it, for we cannot see how it could, in any event, have life for more than six years, or, at all events, after Mr. Van Syckel's death. In our opinion, with all due deference to counsel for complainants, on the facts before us it would be preposterous to hold that now, when this partnership is ended, Sobrinos de Ezquiaga must give up their half of the land, which they bought and paid for, indefinitely to Mr. Van Syckel's heirs at a rental of $31.50 per month.

Therefore, for all the reasons set forth in this opinion, a decree will be prepared and entered finding the issues as to this

IV. PORTO RICO—16.

Van Syckel v. Sobrinos de Ezquiaga.

lease for the respondents, and that the said postponing instrument has no force or effect between the parties, and that the said instrument and lease shall be canceled and considered as of no effect, and that an accounting must be immediately had between the parties, thereafter to be followed by a winding up of the concern and a division of the partnership property *in specie* as far as may be, or that the same shall be sold in whole or in part if the division *in specie* is found to be impractical, to the extent that it shall be so found, and that thereafter a commissioner will be appointed by the court for the purpose of recommending a division if the parties shall not mutually agree upon a division.

The costs up to the time of the filing of this opinion, owing to the circumstances, will be taxed and paid in the proportion of one third thereof to and by the complainants, and two thirds to and by the respondents and cross complainants. Thereafter, to the end of the litigation, the costs shall be taxed and paid as the court shall hereafter determine, to depend largely on the question as to which side shall be at fault in the accounting.

From the court's knowledge of the case, it is of the opinion that complainants will scrutinize the accounting with great care, and therefore hopes that respondents, who have had charge of the property during all these years, will facilitate such accounting and render the same fully and promptly in detail, without overcharge or evasion of any kind or character, to the end that the same may be properly carried forward and this litigation ended; and it is so ordered. The case is retained for all necessary purposes.